UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
LUIS SANTANA,

                    Plaintiff,                 **MEMORANDUM AND ORDER**
                                                                 2:15-cv-2563 (DRH)(GRB)

    - against –

RENT A THRONE, INC. and SEAN O'ROURKE,

                    Defendants.
-------------------------------------------------------X

**APPEARANCES**

**BORELLI & ASSOCIATES P.L.L.C.**
Attorneys for Plaintiff
1010 Northern Boulevard, Suite 328
Great Neck, NY 11021
  By:    Alexander T. Coleman, Esq.
           Michael J. Borrelli, Esq.

**HARFENIST KRAUT & PERLSTEIN LLP**
Attorneys for Defendants
300 Marcus Avenue, 2nd Floor East
Lake Success, NY 11042
  By:    Andrew C. Lang, Esq.
           Stephen J. Harfenist, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff Luis Santana ("Plaintiff") brought this action against Defendants Rent A Throne, Inc. ("RATI") and Sean O' Rourke ("O'Rourke") (collectively, "Defendants") alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206(a), 207(a);and 215(a)(3) and the New York Labor Law ("N.Y. Lab. Law") §§ 160, 190–91, 195(1) and (3), 663(1), 652(1), and 215(a)(3), for failure to pay overtime and for retaliation for making a good faith

complaint. (Complaint [DE 1] ¶ 1 (hereinafter "Compl.").) Presently before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons set forth below, the motion is denied.

## BACKGROUND

The following facts are taken from the parties' submission, and are undisputed unless noted otherwise.

RATI is a New York corporation that provides portable bathrooms and toilet rentals to construction sites and event venues in New York City and surrounding counties in New York State. (Defendants' R. 56 Stmt. [DE 29] at ¶¶ 1–2 (hereinafter "Defs.' R. 56 Stmt.")]. Defendant O'Rourke is part-owner and Chief Executive Officer of Defendant RATI. (*Id.* ¶ 3.) Plaintiff is a resident of the State of New York and was previously employed by another portable bathroom company. (*Id.* ¶ 4.) Plaintiff was hired by RATI on or about May 11, 2011, at which point he signed the initial wage notice. (*Id.*) Plaintiff never had a written employment agreement with RATI. (*Id.* ¶ 5.) At the time of hiring, Plaintiff was paid a rate of $25.00 per hour, or $1,000.00 per week, plus an overtime rate of $37.50 per hour. (*Id.* ¶ 6.) Plaintiff claims that during this initial work period he worked an average of 15 to 30 hours a week of overtime, including on weekends and holidays. (Plaintiff's R. 56 Stmt. [DE 33] at ¶ 21, 23 (hereinafter "P.'s R. 56 Stmt.") Plaintiff states that he did not fill out time sheets in 2011, as there were no time sheets; rather, he signed a document to receive his pay. (*Id.* ¶ 25.)

Plaintiff claims that at some time in 2012 he complained about the hours he was working but not being paid for, so Defendants offered him $100 more per week to make up for the lack of overtime compensation. (*Id.* ¶ 22.) Defendants dispute only the statement that the supplemental $100 was to cover overtime. (Defs.' R. 56 Stmt. ¶ 7.) Defendants claim this money was given

as part of Plaintiff's promotion from an hourly to a salaried employee. (*Id.*) Defendants claim that Plaintiff signed a Second Wage Notice at this time that indicated that Santana was converted to a salaried employee. (*Id.*) Plaintiff disputes this and testified that he did not recognize the Second Wage Notice and that he has concerns that the document may be fraudulent. (P.'s R. 56 Stmt. ¶ 7.) As evidence of Plaintiff's status as a salaried employee, Defendants claim that Plaintiff's salary was never reduced in the pay period from January 27, 2012 through October 5, 2012. (Defs.' R. 56 Stmt. ¶ 8.) Plaintiff disputes this, saying that he received a reduction of $100 from his base in the pay period of October 1, 2012 through October 20, 2012; an increase of $100 over his base from the pay period from October 21, 2012 to October 27, 2012; and then back to his base salary pay the week of October 28, 2012 through November 3, 2012. (P.'s R. 56 Stmt. ¶ 8.)

Defendants state that during Plaintiff's employment he was considered a field manager. (Defs. R. 56 Stmt. ¶ 11.) Plaintiff contends that this is immaterial and was Defendants' understanding alone, if true. (P.'s R. 56 Stmt. ¶ 11.) During his employment, Plaintiff had certain duties that may or may not have been managerial in nature. They are as follows. Defendants claim that Plaintiff testified at a hearing on behalf of RATI before the New York Compensation Board regarding a terminated employee. (Defs.' R. 56 Stmt. ¶ 12.) Plaintiff maintains that he was there only because Defendants directed Plaintiff to relay the message to the employee that he was fired. (P.'s R. 56 Stmt. ¶ 12.) The parties agree that Plaintiff told customers he was a manager when he was sent to work sites to resolve a problem, but Plaintiff claims that he did that based on the circumstances and that the customers knew he was only a driver because he would also clean the bathrooms. (Defs.' R. 56 Stmt. ¶ 13; P.'s R. 56 Stmt. ¶ 13.) Defendants claim that Plaintiff terminated an employee, whereas Plaintiff says he only

terminated the employee after Defendant O'Rourke had already terminated the same employee two days prior. (Defs.' R. 56 Stmt. ¶; 14; P.'s R. 56 Stmt. ¶ 14.) The Parties agree that Plaintiff recommended people for hiring who were almost always subsequently hired, but Plaintiff contends that his recommendations carried no particular weight and he never hired people directly himself. (Defs.' R. 56 Stmt. ¶ 15; P.'s R. 56 Stmt. ¶ 15.) The Parties agree that new employees were required to shadow Plaintiff upon starting the job. (Defs.' R. 56 Stmt. ¶ 16; P.'s R. 56 Stmt. ¶ 16.). Defendants claim that Plaintiff trained the office manager, which Plaintiff disputes except insomuch as he explained to the office manager how to organize a route but did not train him in any other aspects of the manager position. (Defs.' R. 56 Stmt. ¶ 17; P.'s R. 56 Stmt. ¶ 17.) Defendants claim that Plaintiff gave other drivers job-related advice, which Plaintiff objects to as a material fact but does not dispute. (Defs.' R. 56 Stmt. ¶ 18; P.'s R. 56 Stmt. ¶ 18.) Finally, the Parties dispute whether Plaintiff had one of only two keys to the business premises, with Plaintiff noting that at one point the office manager took away his key. (Defs.' R. 56 Stmt. ¶ 19; P.'s R. 56 Stmt. ¶ 19, 30.)

      Defendant O'Rourke admitted that Plaintiff "didn't really have exact hours" and that he would open the shop at 4:00 a.m., and stay until 2:00 p.m. to 3:00 p.m., and that Plaintiff would work special events on weekends. (P.'s R. 56 Stmt. ¶¶ 24–25.) Plaintiff claims that in August 2014 he complained to Defendants about their failure to pay him overtime wages. (Compl. ¶ 23.) Plaintiff claims that after this time, Defendants retaliated by requiring him to drive unsafe trucks. (P.'s R. 56 Stmt. ¶ 37.) This lasted for several months. Finally, on January 14, 2015, Plaintiff claims that he told Defendant O'Rourke via a text message that his truck was unsafe. (P.'s R. 56 Stmt. ¶¶ 42, 46.) Plaintiff quit several days later and was unable to complete his route that day because the truck was in unsafe condition. (*Id.* ¶ 42–43.)

# DISCUSSION

## I. Legal Standard

Summary judgment pursuant to Rule 56 is appropriate only where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. SYS. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (*quoting Anderson*, 477 U.S. at 252) (internal quotation marks omitted), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (internal quotation marks omitted), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on

"mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing Anderson, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587).

## II. The Parties' Claims

Plaintiff brings nine causes of action in his Complaint, which are as follows. First, a claim for unpaid overtime under the FLSA, 29 U.S.C. § 207(a). (Compl. ¶¶ 31–37.) Second, a claim for minimum wage violations under the FLSA for unpaid work pursuant to 29 U.S.C. § 206. (*Id.* ¶¶ 38–44.) Third, a claim for unpaid overtime under N.Y. Lab. Law § 160 and New York Comp. Codes R. & Regs. 142-2.2. (*Id.* ¶¶ 45–50.) Fourth, a claim for minimum wage violations under N.Y. Lab. Law § 652(1). (*Id.* ¶¶ 51–57.) Fifth, a claim for failure to pay wages in violation of N.Y. Lab. Law §§ 190, 191, and 663(1). (*Id.* ¶¶ 58–64.) Sixth, a claim for failure to furnish proper wage notices in violation of N.Y. Lab. Law § 195(1). (*Id.* ¶¶ 65–70.) Seventh, a claim for failure to furnish proper wage statements in violation of N.Y. Lab. Law § 198(1-d).

(*Id.* ¶¶ 71–76.) Eighth, a claim for retaliation in violation of the FLSA, 29 U.S.C. § 215(a)(3). (*Id.* ¶¶ 77–82.) The ninth and final cause of action is a claim for retaliation in violation of N.Y. Lab. Law § 215(1)(a). (*Id.* ¶¶ 83–89.)

In their motion for summary judgment, Defendants claim that they are not responsible to Plaintiff for damages caused by non-payment of overtime wages because other than "an initial period from May 2011 to January 2012, [Plaintiff] was excluded from the protections of the federal and state overtime wage statutes as a 'bona fide executive'" under the FLSA. (Mem. in Supp. at 1.) Moreover, Defendants insist that Plaintiff did receive wage and hour notices, and statements detailing the particulars of each wage payment. (*Id.* at 2.) Finally, Defendants claim that Plaintiff cannot prove retaliation as: (1) the trucks were safe; (2) even if he were forced to drive unsafe vehicles that would not constitute an adverse employment action; and (3) there is no causal connection between the unsafe trucks and his complaints of lack of overtime pay. (*Id.* at 3.) The Court will address each of these arguments in turn.

### III. The Motion for Summary Judgment is Dismissed in Its Entirety

Before delving into the discussion of whether to dismiss Plaintiff's Complaint on summary judgment, the Court reiterates that the standard is whether there is more than a scintilla of evidence of a genuine issue of material fact to be tried. *Rule*., 85 F.3d at 1011. If there are genuine issues of material fact then the motion must be denied.

#### A. Whether Plaintiff Was a "Bona Fide" Executive

##### i. Legal Standard

Section 7(a)(1) of the FLSA provides in relevant part that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than

one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). One exception to this overarching rule is that the requirement for overtime pay "shall not apply with respect to . . . any employee employed in a bona fide executive, administrative, or professional capacity[.]" 29 U.S.C. § 213(a)(1). The Code of Federal Regulations defines an "employee employed in a bona fide executive capacity" to mean an employee: (1) compensated on a salary basis pursuant to § 541.6; (2) "[w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision" of the enterprise; (3) "[w]ho customarily and regularly directs the work of two or more other employees;" and (4) "[w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.6(a). This is a conjunctive definition, which means that an employee must meet all four elements to be considered a "bona fide executive."

"The N.Y. Lab. Law also mandates overtime pay and applies the same exemptions as the FLSA." *Reiseck v. Universal Communications of Miami, Inc.*, 591 F.3d 101, 105 (2d Cir. 2010) (citing N.Y. Comp. Codes R. & Regs. tit 12, § 142-3.2); *see also Santillan v. Henao*, 822 F.Supp.2d 284, 292 (E.D.N.Y. 2011) (citing *Chun Jie Yin v. Kim*, No. 07 CV 1236, 2008 WL 906736, at *4 (E.D.N.Y. Apr. 1, 2008) (explaining that the N.Y. Lab. Law "mirrors the FLSA in compensation provisions regarding minimum hourly wages and overtime[.]")); *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 359–60 (E.D.N.Y. 2015) (quoting the same). Therefore, whether Plaintiff qualifies as a "bona fide" executive for purposes of the exemption to the FLSA overtime requirements is relevant to both his FLSA and N.Y. Lab. Law claims and is ultimately determinative of his first through fifth causes of action.

    ii. There Are Material Questions of Fact Regarding Whether Plaintiff Was an Executive

Looking at the four part test for determining whether an employee is "employed in a bona fide executive capacity," the first question is whether Plaintiff was salaried. 29 C.F.R. § 541.6(a).

> An employee is generally considered to be paid on a 'salary basis' within the meaning of the[] regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. § 541.602(a). Here, Defendants claim that Plaintiff became salaried on January 23, 2012, and signed a Second Wage Notice confirming as much. (Def.'s R. 56 Stmt. ¶ 7.) Defendants also state that there were no reductions in Plaintiff's pay from January 27, 2012 through October 5, 2012, after his salary was raised by $100. (*Id.* ¶¶ 8–9). Plaintiff disputes this, and cites to Defendants' own Exhibit H which shows that his pay stub for the week of October 14, 2012–October 20, 2012, was reduced to $1,000, while his pay stub for the week of October 21, 2012–October 27, 2012, was raised to $1,200. (P.'s R. 56 Stmt. ¶¶ 8 – 9; Defs.' Ex. H, D-211, D-212.) Plaintiff also testified that he believed the Second Wage Notice stating that he was thereafter a salaried employee may be fraudulent and that he had never seen it before. (P.'s R. 56 Stmt. ¶ 7; P.'s Dep. [DE 31-3] at 250:2–18, 251:9–23 (Aug 1. 2016).)

Based on the evidence presented by Plaintiff, there is a material question of fact as to whether Plaintiff was a salaried employee for the time period that Defendants claim he was. As the test for being a bona fide executive is a conjunctive test, the fact that Defendants have failed on the first element means that they fail as to the entire test. However, the Court will briefly touch on the other three elements.

The second element is whether Plaintiff's primary duty was in management of the enterprise in which Plaintiff was employed. 29 C.F.R. § 541.6(a). Defendants claim that Plaintiff was considered a manager and supervisor of field personnel. (Defs.' R. 56 Stmt. ¶ 11.) Defendants point to the fact that Plaintiff represented Defendants at a hearing, that Plaintiff put himself out to customers as a manager, that new employees shadowed Plaintiff for a period of time after being hired, and that Plaintiff trained the office manager. (Defs' R. 56 Stmt. ¶¶ 11–13, 16–17.) Plaintiff contends that he only represented Defendants at the hearing because he was the one who dealt with the aggrieved employee; Plaintiff also states that he only put himself out to customers as a manager when there was a problem, but that the customers knew he was a driver "because he came to those sites every day to clean toilets, which was not a job that managers ordinarily do." (P.'s R. 56 Stmt. ¶ 13.) Plaintiff also explains that while new employees shadowed him, this only happened 2-3 times a year and he "did not give the truck drivers responsibilities after they finished shadowing him[.]" (*Id.* ¶ 16.) Finally, Plaintiff testified that he did not train the office manager except insomuch as how to organize a route, and he has no authority over the office manager. (*Id.* ¶ 17).

While the evidence on this second element is again directly contradictory, the real issue is that Plaintiff's "primary duty" does not appear to be management of other personnel under either Party's telling of the facts. It seems that his primary duty was to drive trucks in the field and attend to the porta-potties. Even though Defendants cite to the Code of Federal Regulations and case law saying that an employee who spends more than 50 percent of his time on exempt work satisfies the primary duty requirement, Defendants offer no concrete evidence that Plaintiff spent 50 percent or even some lesser percentage of his time managing. (*See* Defs.' Reply Mem. in Supp. [DE 36] at 4–5 (March 27, 2017) (citing 29 C.F.R. § 541.700(b); *Donovan v. Burger King*

*Corp.*, 672 F.2d 221, 226 (1st Cit. 1982)). As there is an outstanding question of material fact on whether or not Plaintiff's primary duty was to manage the business, Defendants also fail on the second element.

The third element looks at whether Plaintiff regularly directed the work of two or more other employees. 29 C.F.R. § 541.6(a). Defendants claim that Plaintiff always supervised at least two field employees and received $200 more in pay than the employees he managed. (Mem. in Supp. at 4.) Plaintiff claims that Defendants did not even have enough employees for him to supervise at least two people, given that he was not in charge of the office manager. (P.'s R. 56 Stmt. ¶ 32.) Plaintiff cites to Defendant O'Rourke's testimony that in 2011 there were one to two employees, and in 2012 there were "two, three, possibly four employees." (*Id.* (quoting O'Rourke Dep. [DE 31-2] at 23:18–25, 24: 1–4 (Aug. 2, 2016).) Once again, there is a material question of fact as to whether Plaintiff regularly directed the work of two or more other employees. Therefore, Defendants fail on element three.

The final element is whether Plaintiff had the authority to hire or fire other employees or if his "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees [were] given particular weight." 29 C.F.R. § 541.6(a). Defendants point to the fact that RATI hired six of the seven people Plaintiff recommended, many of whom were Plaintiff's family members. (Defs.' R. 56 Stmt. ¶ 15.) Defendants also cite to a text message from Plaintiff saying that he had fired an employee named Ronald Richardson. (*Id.* ¶ 14.) Plaintiff, by contrast, claims that his recommendations on hiring carried no particular weight, that he did not have the authority to hire or fire employees. (P's R. 56 Stmt. ¶ 15 (citing Santana Dep. [DE 31-3] at 213:2–6 (Aug. 1, 2016) ("I didn't fire or hire no one since I first started at the company.")).) Plaintiff claims that he did not truly fire Ronald Richardson because

he was told to fire Mr. Richardson only after Defendant O'Rourke had initially terminated him two days prior to the text message in question. (P's R. 56 Stmt. ¶ 14.) As such, there are material questions of fact as to whether Plaintiff had the authority to hire and fire employees or if his recommendations were given particular weight. Therefore, Defendants also fail on element four.

Based on the foregoing discussion, Defendants' motion for summary judgment as to the first through fifth causes of action is denied.

    *B. Whether Plaintiff Received Wage and Hour Notices, and Wage and Hour Statements*

        i. Legal Standard

N.Y. Lab. Law § 195(1)(a) requires that every employer provide his employees in the employees' primary language:

> at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

N.Y. Lab. Law § 195(1) (a). At the time that the employer provides such notice, the employer must obtain a signed and dated written acknowledgment from the employee of receipt of the notice. *Id.* N.Y. Lab. Law § 193(a) requires that every employer "furnish each employee with a statement with every payment of wages," listing: the dates of work covered; the employee's name; the employer's name and address; the rate of pay, as well as whether the pay is hourly, weekly, etc.; gross wages; deductions; allowances; and net wages. "If any employee is not

provided a statement or statements as required by [§ 195(3)] of this article, he or she shall recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred[.]" N.Y. Lab. Law § 198(1-d).

The Second Circuit has held that "an employer's duty under the FLSA to maintain accurate records of its employees' hours is non-delegable." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 363 (2d Cir. 2011). "New York law goes one step further and requires that employers who fail to maintain the appropriate records 'bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011) (quoting N.Y. Lab. Law § 196-a).

    ii. There Are Material Questions of Fact Regarding Whether Plaintiff Received the Required Notices

Here, Plaintiff claims that Defendants willfully failed to provide him with an accurate wage notice containing the criteria enumerated in N.Y. Lab. Law § 195. (Compl. ¶¶ 68–69.) Defendants argue that N.Y. Lab. Law § 195(1) does not confer a private right of action. Plaintiff does not dispute that he has no private right of action regarding annual wage notices. (Mem. in Opp. at 25.) However, as Plaintiff notes, he does have a private right of action to recover penalties for violations of § 195(1) regarding whether he was provided an accurate wage notice at hire. *See Kone v. Joy Constr. Corp.*, No. 15 CV 1328, 2016 WL 866349, at *5 (S.D.N.Y. March 3, 2016) ("A private right of action to recover penalties for violations of Sections 195(1) and 195(3) is provided by Sections 198(1-b) and 198(1-d) of the Labor Law, respectively.") Accordingly, the Court must consider if there is a material question of fact as to whether Plaintiff received the required wage notices at his time of hire and at the time he was supposedly promoted to a salaried employee.

First, Defendants claim that Plaintiff signed the initial wage notice when he was hired. (Defs.' R. 56 Stmt. ¶ 4.) Plaintiff does not dispute that he signed the notice, but claims that there is a material question of fact as to whether this wage notice contains accurate information. (Mem. in Opp. at 26.) Reviewing the wage notice provided as an exhibit to Defendants' own submission, the Court agrees with Plaintiff only to the extent that Defendants failed to specific the designated pay day and simply wrote "weekly." (*See* Notice and Acknowledgement of Wage Rate and Designated Payday Hourly Rate Plus Overtime [DE 27-1] at D-171.)

Defendants also argue that they provided a proper wage notice to Plaintiff when he was promoted to a salaried employee and point to the fact that Plaintiff has acknowledged that his signature is on a document entitled "Notice and Acknowledgement of Pay Rate and Payday under Section 195.1 of the New York State Labor Law Notice for Hourly Employees" dated January 23, 2012. (Defs.' R. 56 Stmt. ¶ 7.)[1] However, Plaintiff testified that he had never seen the document before, that it did not contain his handwriting, and that it may have been fraudulently created by the office manager who had a practice of scotch taping signatures onto documents and then photocopying them. (P.'s R. 56 Stmt. ¶ 7.) Therefore, there is a material question of fact regarding whether Plaintiff received proper wage notices in compliance with N.Y. Lab. Law § 195.

Plaintiff also claims that Defendants willfully failed to furnish accurate wage statements pursuant to N.Y. Lab. Law § 195(3). (Compl. ¶¶ 74–75.) The Parties agree that the only period in contention is the period from May 11, 2011 through December 24, 2011, after which point

---

[1] While the Second Wage Notice is entitled a "Notice for Hourly Employees," the line for "Employee's rate of pay . . . per hour" is scratched out and the word "Salary" is handwritten next to it. ([DE 27-7] at D-172.) As explained above, Plaintiff claims that this is not his handwriting. (P's R. 56 Stmt. ¶ 7.)

Defendants hired a third party vendor to handle payroll.[2]  (Mem. in Opp. at 27–28; Reply Mem. in Supp. at 9.)  Defendants insist that all employees, including Plaintiff, were required to complete and sign a Weekly Work Schedule identifying the hours they worked.  (Mem. in Supp. at 15 (citing O'Rourke Aff. [DE 27-10] ¶ 26).)  Plaintiff disputes this and claims that he "did not fill out his time sheets reflecting all of his hours worked, including overtime hours because there were no time sheets."  (P's R. 56 Stmt. ¶ 25.)  Instead, he and the other employees signed a document to receive their pay.  (*Id.*)  Plaintiff also claims that the handwriting on the wage notices do not belong to Plaintiff or any of the other drivers, suggesting that they are fraudulent.  (*Id.* ¶ 20.)  Defendants cite to the paycheck stubs from 2011 that Plaintiff produced during discovery, which Defendants attached to their submissions as Exhibit L.  (Reply Mem. in Supp. at 9.)  However, these wage notices are clearly deficient as they do not contain Plaintiff's rate of pay, whether the pay is hourly or weekly, and the gross versus net pay among other issues.  (*See* [DE 27-14] at 2 et seq.)  Accordingly, there is a material question of fact as to whether Plaintiff received accurate wage statements pursuant to N.Y. Lab. Law § 195(3) in the period prior to December 24, 2011.

Based on the foregoing discussion, Defendants' motion for summary judgment as to the sixth and seventh causes of action is denied.

---

[2] Defendants state that Plaintiff received a voucher from the third-party payroll vendor for each weekly wage payment direct deposited into his bank account, which included: "the dates of work covered by that payment of wages; Santana's name; RATI's name; RATI's address and telephone number; Santana's rate of pay and the basis thereof; Santana's gross wages; deductions (i.e, FICA, Medicare, etc.); and Santana's net wages." (Mem. in Supp. at 15 (citing O'Rourke Aff. [DE 27-11] ¶ 30).)

C. *Whether Plaintiff Was Forced to Drive Unsafe Trucks and Whether This Constitutes and Adverse Employment Action*

i. Legal Standard

The FLSA provides in relevant part that it is unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter[.]" 29 U.S.C. § 215(a)(3). "A plaintiff alleging a claim of FLSA retaliation establishes a prima facie case by showing: '(1) participation in [a] protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.'" *Flores v. Mamma Lombardis of Holbrook, Inc.*, 942 F. Supp. 2d 274, 278 (E.D.N.Y. 2013) (citing *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010).

An internal oral complaint is a protected activity under the FLSA if it is "'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'" *Greathouse v. JHS Sec. Inc*, 784 F.3d 105, 107 (2d Cir. 2015) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)). An employment action is "adverse" if it might have "'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). "[A] causal connection between an adverse action and a plaintiff's protected activity may be established 'through evidence of retaliatory animus directed against a plaintiff by the defendant[.]'" *Mullins*, 626 F.3d at 53 (quoting *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991)). Plaintiff can also "'show[] that the protected activity was closely followed in time by the adverse action." *Mullins*,

626 F.3d at 53 (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)).

The analogue section regarding retaliation under the N.Y. Lab. Law provides that no employer or his or her agent "shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter[.]" N.Y. Lab. Law § 215(1)(a). The same standard for a claim of retaliation under the FLSA also applies to a claim of retaliation under N.Y. Lab. Law. *See Luna v. HDMP LLC*, No. 2013 CV 3325, 2014 WL 12543796, at *6 (E.D.N.Y. Aug. 28, 2014).

      ii.    There Are Material Questions of Fact Regarding Whether Defendants Retaliated Against Plaintiff

Defendants argue that the trucks were not unsafe, and that even if they were, this would not constitute an adverse employment action. (Mem. in Supp. at 22–23.) Plaintiff, on the other hand, claims that Defendants retaliated against him by forcing him to drive unsafe trucks, which amounted to constructive discharge. (Mem. in Opp. at 29.) Constructive discharge is an adverse employment action "'when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into involuntary resignation.'" *Caskey v. Cty. of Ontario*, 560 Fed. Appx. 57, 59 (2d Cir. 2014) (quoting *Morris v. Schroder Capital Mgmt. Int'l*, 481 F.3d 86, 88 (2d Cir. 2007)).

Defendants do not dispute that the first part of the test, regarding participation in a protected activity is met. (Mem. in Opp. at 23.) However, Defendants argue that "proof of the latter two elements are lacking as a matter of law." (*Id.*) Regarding the second element of whether there was an adverse employment action disadvantaging Plaintiff, the Court finds that

there are material questions of fact.  Defendants argue that there is no evidence of unsafe trucks.  (*Id.*)  Plaintiff offers evidence of an occurrence on August 21, 2014, when he was stopped by police and ticketed for several safety violations.  (Mem. in Supp. at 29 (citing O'Rourke Dep. at 112:3–9).)  Plaintiff insists that having to drive unsafe trucks forced him to leave his employment, pointing to a text message from him to Defendant O'Rourke on January 14, 2015, saying: "Heats not working on truck, or defrosters.  Windshield wipers broken, and lights are f[***]ed.  I've been reporting this on sheet and still not fixed.  The heat system is a totally new issue."  (P.'s R. 56 Stmt. ¶ 42 (citing [DE 31-10] at 1).)  Plaintiff claims that he was unable to complete his route on his last day of employment, January 20, 2015, because of an issue with the trucks.  (P.'s R. 56 Stmt. ¶ 43.)  While Defendants argue that driving unsafe trucks cannot be an adverse employment action, the Court finds that requiring an employee to endanger his person in an unsafe vehicle because the employee raised a complaint would "dissuade[] a reasonable worker from making or supporting a charge of discrimination" and may even "make[] an employee's working conditions so intolerable that the employee is forced into involuntary resignation."  *Greathouse*, 784 F.3d at 107; *Caskey*, 560 Fed. Appx. at 59.  Accordingly, there are material questions of fact regarding the second element.

The final element is whether there is a causal connection between Plaintiff's complaint regarding overtime wages and Defendants' alleged actions in forcing him to drive unsafe trucks.  To meet this element, Plaintiff may "show[] that the protected activity was closely followed in time by the adverse action."  *Mullins*, 626 F.3d at 53.  Plaintiff claims that while there is at most a gap of five months between the time he first complained about lack of overtime and when he was forced to drive unsafe trucks, in reality the gap is much shorter because he was making ongoing complaints.  (Mem. in Supp. at 32.)  Defendants do not dispute this five month gap.

(Mem. in Opp. at 24 ("[Plaintiff] started complaining about the lack of overtime pay in August 2014 and his separation from the company occurred five months later on January 20, 2015.")) The evidence presented is sufficient to establish a material question of fact as to whether there is a causal connection between Plaintiff being forced to drive unsafe trucks and his ongoing complaints about insufficient wages. *See Cioffi v. Averill Park Central School Dist. Board of Ed.*, 444 F.3d 158, 168 (2d Cir. 2006) (citing *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545 (2d Cir. 2001) ("passage of up to five months short enough for causal connection")). Accordingly, Defendants' motion for summary judgment as to the eighth and ninth causes of action is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is denied in its entirety.

**SO ORDERED.**

Dated: Central Islip, New York.
February 21, 2018

_____/s/_____
Denis R. Hurley
Senior District Court Judge, E.D.N.Y.